**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-4359
_____

ROSS DRESS FOR LESS, INC.

v.

VIWY, L.P.; VIWY PP, LLC,

Appellants

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 2-12-cv-00131)
District Judge:  Honorable Juan R. Sánchez

Submitted under Third Circuit LAR 34.1(a)
on November 5, 2013

Before:  GREENAWAY, JR., VANASKIE and ROTH, Circuit Judges

(Opinion filed: July 1, 2014)

_____

O P I N I O N

_____

**GREENAWAY, JR.**, Circuit Judge:

VIWY, L.P., and VIWY PP, LLC (collectively, "VIWY"),[1] appeal the District Court's November 5, 2012, Order denying VIWY's motion to dismiss the complaint of Ross Dress for Less, Inc. ("Ross") for lack of subject-matter jurisdiction and ordering that arbitration of their dispute be stayed. For the reasons set forth below, we will vacate and remand with instructions that the District Court enforce the arbitration clause as to both the overpayment and offset issues and order that the case be arbitrated.

## I. Background

In June 2007, Ross leased commercial retail space in the Lycoming Crossing Shopping Center in Lycoming County, Pennsylvania, from VIWY. According to the terms of the lease, Ross was required to pay VIWY "Minimum Rent" in the monthly amount of $29,166.66, unless VIWY failed to entice enough "Required Co-Tenants" to open stores in the Shopping Center. More specifically, VIWY was responsible for ensuring either that certain specific retailers were operational in the Shopping Center throughout the course of the lease or that a specified number of other, national retailers were operational in stores that met minimum square footage requirements. If at any time during the lease VIWY was unable to meet this obligation, the lease permitted Ross to pay a reduced "Substitute Rent," a figure that was tied to Ross's gross sales for a particular month. This case involves Ross's contention, disputed by VIWY, that there were insufficient Required Co-Tenants operating in the Shopping Center during the term of the lease.

---

[1] VIWY PP, LLC, is the general partner of VIWY, L.P.

Ross paid Minimum Rent from June 2007 through March 2011, but then determined that it had overpaid because VIWY had not met the Required Co-Tenant provision. In total, Ross believed it had overpaid $573,789.10 in rent to VIWY over the course of two years. Ross made a written demand that VIWY reimburse this amount. VIWY refused, contending that the Required Co-Tenant provision was satisfied. In response, Ross unilaterally determined that it owed only Substitute Rent in March 2011, and offset its alleged overpayment from its rent payments through September 2011. By the time VIWY terminated the lease in August 2011, Ross had offset a total of $77,507.77. Ross's complaint in this case, in its demand for relief, did not include the amount it had offset, and Ross did not ask the District Court to determine whether these offsets were authorized by the lease.

The crux of this appeal is VIWY's contention that this dispute must be arbitrated. The lease contains a provision that determines how the parties are to resolve "any controversy or dispute" that "shall arise under" the lease. Pursuant to Section 20.2.1 of the lease, "[a]ll Disputes, the monetary value of which is Fifty Thousand Dollars ($50,000) or less shall be settled by Arbitration," which is governed by Section 20.2.3. (App. 72.) On the other hand, "[a]ll Disputes, the monetary value of which exceeds Fifty Thousand Dollars ($50,000) . . . shall first require the utilization of Mediation as provided in Section 20.2.2." (*Id.*) Section 20.2.2, in turn, provides that if any dispute has not been resolved by mediation, or "if a party fails to participate in Mediation, then at the option of either party by written notice, the Dispute shall be determined by suit or action in court, unless it is a matter for Arbitration as described in Section 20.2.1 above." (*Id.*)

3

A separate provision of the lease, Section 20.1.1(e), governs VIWY's remedies for an improper offset. Under that provision, Ross's "withholding of any disputed amount of Rent . . . shall not constitute a default under this Lease by Tenant unless and until . . . an arbitrator per Section 20.2.3 shall determine by means of a final award that such right to offset . . . has been exercised improperly by Tenant." (App. 70.)

VIWY attempted to initiate mediation proceedings on August 29, 2011, but Ross declined to participate. Instead, Ross filed its complaint in this action on January 11, 2012. VIWY appeals the District Court's November 5, 2012, Order denying VIWY's motion to dismiss Ross's complaint and staying any arbitration on Ross's offsets "until that issue is ripe for adjudication." (App. 4.)

## II.     Discussion

"We exercise plenary review over questions regarding the validity and enforceability of an agreement to arbitrate," *Puleo v. Chase Bank USA, N.A.*, 605 F.3d 172, 177 (3d Cir. 2010), and we apply the same standard the District Court should have applied in reviewing the arbitration award, *see Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 772 (3d Cir. 2013).

The sole issue on appeal is whether the District Court erred in concluding that the scope of the arbitration clause in the lease did not cover Ross's claim that it had overpaid rent between 2009 and 2011. We will vacate and remand with instructions that the

4

District Court enforce the arbitration clause as to the parties' overpayment and offset issues and order that the entire case be arbitrated.[2]

For a court to compel arbitration, it must determine that the dispute is within the scope of a valid agreement to arbitrate. *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 515, 523 (3d Cir. 2009). In making this determination, "there is a presumption of arbitrability" that "an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (internal citation and quotation marks omitted).

There are two central issues in this case, namely whether Ross overpaid rent between 2009 and 2011 and whether Ross's offset of rent for a period of months in 2011 was proper. The same question of fact—whether VIWY had three anchor tenants between 2009 and 2011, such that the Required Co-Tenancy provision[3] of the lease was

---

[2] The District Court had jurisdiction over this case pursuant to 28 U.S.C. § 1332 because Ross is a Virginia corporation with its principal place of business in California, neither defendant is a resident of either Virginia or California, and the amount in controversy exceeds $75,000. We have appellate jurisdiction to consider appeals from a District Court's denial of a motion to compel arbitration. 9 U.S.C. § 16(a)(1); *Quilloin v. Tenet HealthSystem Phila., Inc.*, 673 F.3d 221, 227 (3d Cir. 2012).

[3] *See* Compl. Ex. A, at § 1.7 (setting forth specific retailers (Target and Kohl's), or a specified number of retailers, that must be operational, and the minimum square footage they must occupy).

satisfied—resolves and is dispositive of both issues.[4]  Thus, the two issues are not wholly

distinct but, to the contrary, are inextricably linked.

Section 20.2.1 of the lease indicates that a dispute involving an amount greater

than $50,000—such as the parties' dispute regarding overpayment—should be resolved

in litigation.  Section 20.1.1(e) of the lease states that a dispute regarding the propriety of

a rent offset should be resolved in arbitration.[5]  However, the lease fails to state the forum

in which the parties should resolve a dispute implicating both of these provisions—

namely where, as here, the dispute involves an amount greater than $50,000 and involves

offset and overpayment issues.

Given the conflicting lease provisions (and concomitant lack of clarity as to the

parties' *ex ante* intentions), and the fact that offset (which the parties agree is arbitrable)

and overpayment are inextricably linked issues, the presumption of arbitrability militates

in favor of resolving both in arbitration.  *See, e.g.*, *Brayman Const. Corp. v. Home Ins.

Co.*, 319 F.3d 622, 626 (3d Cir. 2003) (stating that all claims that "touch matters covered

by" an arbitration clause "must be arbitrated, whatever the legal labels attached to them")

(internal citation and quotation marks omitted).

---

[4] Specifically, if the Required Co-Tenancy provision was satisfied, the lease would have
required Ross to pay the Minimum Rent amount.  If the Required Co-Tenancy provision
was not satisfied, a Reduced Occupancy Period would have occurred and the lease would
permit Ross to pay the Substitute Rent amount.
[5] Both parties agree that a dispute over Ross's right to offset rent falls within the scope of
mandatory arbitration.

**III. Conclusion**

For the foregoing reasons, we will vacate and remand with instructions that the District Court enforce the arbitration clause as to both the overpayment and offset issues and order that the case be arbitrated.